**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 11-386-DLB-CJS**

**DENNY L. FRENCH**                                                                                            **PLAINTIFF**

vs.            **MEMORANDUM OPINION AND ORDER**

**CLARKSVILLE STAVE AND**                                        **DEFENDANT**
**LUMBER CO., LTD.**

                                         **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**I.     Introduction**

In this diversity action tried before a jury on November 4-6, 2013, Plaintiff alleged that Defendant's employee was negligent in driving a loaded log truck along Kentucky Highway 1995. Specifically, Plaintiff claimed that the log truck crossed the center line as Defendant's employee attempted to guide it through an S-curve. When Plaintiff, who was traveling in the opposite direction along Kentucky Highway 1995, came upon the log truck, he had no choice but to swerve off the road in order to avoid a collision. In rendering a verdict in favor of Defendant, the jury determined that Defendant's employee did not violate the applicable standard of care in operating the log truck. (Doc. # 249).

This matter is before the Court on Plaintiff's Motion for Judgment as a Matter of Law (Doc. # 259) and Motion for New Trial (Doc. # 260). Defendants having responded to the Motions, (Docs. # 262 and 263), and Plaintiff having filed its reply, (Doc. # 265), the Motions are now ripe for review. Having considered the parties' written submissions, and

1

concluding that Plaintiffs' arguments do not support the relief sought under the applicable legal standards, these Motions will be **DENIED.**

II. Analysis

A. Standards of Review

At trial, a party may make a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a). If the court denies the motion, the movant may renew its request within twenty-eight days of the entry of judgment. Fed. R. Civ. P. 50(b). The court may then dispose of the renewed motion by directing the entry of judgment as a matter of law, ordering a new trial, or simply allowing the judgment to stand. *Id.* Movants often file an alternative or joint request for a new trial along with the renewed motion. *Id.*; Fed. R. Civ. P. 59.

In diversity cases, federal courts apply a state law standard of review "when a Rule 50(b) motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence to support the jury verdict." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998). Kentucky law states that a motion for a directed verdict, which is equivalent to a Rule 50(b) motion, should be granted only if "there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ." *Id.* (quoting *Washington v. Goodman*, 830 S.W.2d 398, 400 (Ky. App. 1992). When evaluating such motions, the court must draw all fair and reasonable inferences from the evidence in favor of the non-moving party. *Id.*

By contrast, "federal law governs the district court's decision whether to grant a new trial on the basis of the weight of the evidence." *Conte v. General Housewares Corp.*, 215

F.3d 628, 637 (6th Cir. 2000). Federal Rule of Civil Procedure 59 allows courts to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Courts have interpreted this language to mean that a new trial may be warranted in the following situations: (1) the verdict is against the weight of the evidence; (2) the damages award is excessive; or (3) the trial was influenced by prejudice or bias, or otherwise unfair to the moving party. *Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir. 1996). Although judges retain discretion to grant or deny the motion, they may not "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because [they] feel that other results are more reasonable." *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 132 (6th Cir. 1990); *see also Barnes v. Owens-Corning Fiberglas Corp.* 201 F.3d 815, 820-21 (6th Cir. 2000).

### B. Motion for Judgment as a Matter of Law

Plaintiff bases his renewed motion for judgment as a matter of law on the alleged insufficiency of the evidence that Defendant presented at trial. (Doc. # 260). Plaintiff argues that Defendant did not produce any affirmative evidence regarding the log truck's position in the road when Plaintiff entered the S-curve, save driver Russell Meyer's "bare denial on cross-examination" that he was over the center line of the road. Plaintiff believes that Meyer's denial is insufficient because it conflicts with his prior deposition testimony, as well as his alleged admission to Deputy Roberts at the accident scene.

Plaintiff also argues that he is entitled to judgment as a matter of law because Meyer's admission to Deputy Roberts and Ken Agent's expert testimony demonstrate that there was a violation of state law. In particular, Plaintiff asserts that Ken Agent's

3

explanation of "off tracking" establishes that Meyer breached his duty to remain in the right hand lane of travel. Plaintiff ultimately concludes that the jury verdict should not be allowed to stand because it "was so flagrantly and palpably against the weight of the evidence as to indicate that it was reached as a result of passion or prejudice."[1] (*Id.* at 5).

Before the Court proceeds with its analysis, it is important to point out that Plaintiff's argument takes far too many liberties with the record. For example, Russell Meyer testified at trial that he was in his lane, and had in fact allowed part of the truck to run onto the shoulder of the road, so he could guide the truck through the S-curve without crossing the center line. (Doc. # 261 at 20). Meyer also stated that he did not believe he was ever over the center line because he used his mirrors to check the trailer's position. (*Id.*). When Plaintiff came around the curve, Meyer testified that he feared that Plaintiff would hit him because Plaintiff was halfway over the center line. (*Id.* at 21-22). Meyer did not waver in his account of the accident, despite Plaintiff's attempts to impeach him. (*Id.* at 7-8). His deposition testimony is ultimately consistent on all of these points. (Doc. # 39-1 at 17-18).

Plaintiff also states that Agent's testimony about "off tracking" establishes that Meyer breached his duty to remain in the right hand lane of travel. This assertion is totally flawed. Agent testified that, when a tractor-trailer enters a curve, the trailer will "off-track," or

---

[1] Plaintiff's quotation comes from *Previs v. Dailey*, in which the plaintiff sued the defendant for negligence. Specifically, the plaintiff alleged that the defendant failed to safely pass her on her bicycle. The Kentucky Supreme Court held that the plaintiff was entitled to a directed verdict on the issue of negligence because the defendant's actions amounted to negligence per se. In reaching this conclusion, the court noted that the defendant's own testimony established that he had violated his legal duty to the plaintiff. While his speculative, self-serving comments regarding the plaintiff's actions might allow a jury to apportion fault, it did not change the fact that the defendant was negligent as a matter of law.

In this case, by contrast, Defendant did not admit to violating its legal duty. Instead, the parties vigorously disputed the issue of negligence by presenting conflicting evidence at trial. Therefore, *Previs* is not a proper analogy.

4

deviate slightly from the path taken by the tractor. (Doc. # 255 at 19-21). He went on to note that "off-tracking" into the other lane can be avoided by using the shoulder of the road. (*Id.*). This testimony leaves open the central question in this case: whether or not Defendant crossed the center line. In fact, Agent testified that he could not determine each vehicle's position in the road prior to the accident. (*Id.* at 36-37). Apparently, Plaintiff does not need these facts to divine that Defendant breached his duty to remain in his lane. However, the Court is not inclined to accept such faulty legal reasoning.

At trial, the parties presented conflicting testimony regarding the log truck's position in the road. Plaintiff testified that Defendant's log truck was over the line when he rounded the bend. While Defendant's driver, Russell Meyer, maintained that he had maneuvered the log truck onto the shoulder just before Plaintiff came around the bend, Deputy Roberts' recalled Meyer stating that he was "over the line" on the day of the accident. Accident reconstructionist Ken Agent could not speak to each truck's position in the road before the accident. This evidence, taken together, creates a genuine issue of material fact as to negligence, which was properly submitted to the jury for determination.

### C. Motion for New Trial

Plaintiff's motion for a new trial is based on three assignments of error. First, Plaintiff argues that the Court improperly excluded video of Plaintiff driving down Kentucky Highway 1992. (Doc. # 259). Second, Plaintiff contends that the Court strayed from its prior evidentiary rulings by allowing Defendant's references to the police report at trial. Third, Plaintiff maintains that the Court erred in failing to instruct the jury on negligence per se and sudden emergency. Plaintiff believes that these errors created a trial that was prejudicially unfair to him.

5

### 1. Exclusion of Plaintiff's Video

Defendant filed objections to Plaintiff's proposed Exhibit 35, a video that depicted Plaintiff driving down Kentucky Highway 1992 while describing the accident. (Docs. # 193 and 207). Although the Court took up objections to proposed Exhibits at the Final Pretrial Conference, it deferred ruling on the admissibility of this video. (Doc. # 213). On the morning of trial, the Court excluded the video without allowing Plaintiff to be heard on the objection. (Doc. # 258 at 10-11). The Court reasoned that the video was in the nature of a reconstruction by a layperson. (*Id.*).

Plaintiff argues that this video was demonstrative evidence, just as a photograph is demonstrative evidence, and therefore should have been admitted. Plaintiff believes that it was unfair for the Court to exclude the video and admit Defendant's photographs, which depict "cherry-picked locations and angles of the road." Finally, Plaintiff complains about the Court's refusal to hear his argument on this issue.

The Federal Rules of Evidence give courts broad discretion to admit or exclude evidence from trial. *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). Once the court makes a ruling, it will not be lightly overturned. *Id.* "An erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if the error was not harmless; that is, only if it affected the outcome of the trial." *Id.*

In this case, the Court reviewed the parties' written objections to the proposed Exhibit lists and heard arguments on this particular issue at the Final Pretrial Conference. The Court even deferred ruling on this particular Exhibit so the issue could be given further attention. Although the Court may not have allowed the Plaintiff to speak before making its final ruling, it gave Plaintiff's earlier oral and written arguments careful consideration.

The Court's ultimate decision to exclude the video was well within its discretion under the Federal Rules of Evidence. Moreover, Plaintiff has done nothing to show that the error was not harmless except to argue that the ruling was "unfair" because the jury only saw Defendant's photos of Kentucky Highway 1992. The Court has little sympathy for this argument. Plaintiff knew that the video might be excluded right before trial, so he had the opportunity to produce his own photos as a backup. Moreover, complaints of general unfairness, without any indication that the ruling affected the outcome of the trial, are insufficient to constitute reversible error.

### 2. References to the Excluded Police Report

At the Pretrial Conference, the Court took up the parties' Motions in Limine, including Defendant's Motion to Exclude Police Report and Plaintiff's Motion to Exclude Evidence that Driver Russell Meyer was not cited. (Doc. # 213). The Court granted the former and denied the latter. (*Id.*). Defendant's Motion to Exclude Deputy Brandon Roberts' Opinion Testimony was denied as to evidence of statements Meyer made to Roberts and deferred as to whether Roberts could testify to opinions contained in his affidavit. (*Id.*). The Court later ruled that Roberts could testify to those opinions. (Doc. # 258 at 7-8).

Plaintiff complains that the Court allowed Defendant to disregard its own Motion in Limine by making repeated references to the excluded police report. Plaintiff notes that Defendant referenced the police report in its opening statement, then proceeded to elicit testimony concerning the report from Deputy Roberts and Ken Agent. (Docs. # 255 at 19-21 and 256 at 10-14). Plaintiff argues that these references resulted in a "trial by ambush which was patently unfair to the Plaintiff." (Doc. # 259 at 10).

7

The "determination of the extent of possible comment and argument by counsel rests primarily in the judicial discretion" of the district court. *Eaton Aerospace, LLC v. SL Montevideo Technology, Inc.*, 129 Fed. Appx. 146, 150 (6th Cir. 2005)(*quoting Twachtman*, 106 F.2d 501, 509 (6th Cir. 1939)). However, if counsel repeatedly violates the court's *in limine* ruling and such misconduct results in prejudice, there may be a basis for a new trial. *Id.*; *Fuhr v. School Dist. Of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004). The party seeking the new trial bears the burden of showing prejudice, and district courts have broad discretion in deciding whether to grant a motion for a new trial. *Fuhr*, 364 F.3d at 759. (*quoting City of Cleveland v. Peter Kiewit Sons' Co*, 624 F.2d 749 (6th Cir. 1980)). "The reviewing court must decide whether there is "a reasonable probability that the verdict of a jury has been influenced by improper conduct" by considering "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case....and the verdict itself." *Id.*

After careful re-examination of the trial record, the Court finds that Defendant did not run afoul of its prior *in limine* rulings. Although Plaintiff is correct in asserting that the Court excluded the police report, it certainly did not exclude all testimony regarding its content. By way of other evidentiary rulings, the Court determined that the parties could elicit limited testimony concerning the police report. For example, the Court allowed the parties to discuss the fact that Russell Meyer was not cited, which by necessity involves some reference to the police report. Likewise, allowing Deputy Roberts to testify to opinions contained in his affidavit required some discussion of the report he filled out on the day of the accident. Defendant did ask Ken Agent about police reports, but counsel was careful

to stay within the contours of the Court's rulings while pursuing this line of questioning.

Even if Defendant's line of questioning went beyond the Court's *in limine* ruling, Plaintiff has failed to establish prejudice. Although Plaintiff cites several instances where the police report was mentioned and concludes that these references resulted in an unfair trial, he does not even attempt to explain *how* this alleged misconduct may have influenced the jury verdict.

### 3. Failure to Give Requested Jury Instructions

Both parties proposed jury instructions that included an instruction on sudden emergency. (Docs. # 188 and 190). Plaintiff also requested an instruction on negligence per se. (Doc. # 190 at 16). At the charge conference, the Court, finding that these instructions would confuse the jury, decided that a simple ordinary care instruction would suffice. (Doc. # 253 at 31-32). The given instruction listed several specific duties that fell within the general duty to exercise ordinary care. (Doc. # 246 at 13-14). The Court incorporated the statutory standard of care from Plaintiff's instruction as one of the specific duties falling under the broad duty of ordinary care. (*Id.*).

Plaintiff argues that he was entitled to the negligence per se instruction because he presented ample evidence that Defendant's driver violated state law by crossing the center line of the road. Plaintiff asserts that a sudden emergency instruction was appropriate because Plaintiff was confronted with an unanticipated situation that left little time for deliberation. Specifically, "the sudden emergency presented by Defendant's log truck becoming stuck in the middle of the road, and only becoming visible to the Plaintiff at 400 feet away, eliminated the Plaintiff's duty to maintain control of his vehicle so that Plaintiff did not breach that duty at all." (Doc. # 259 at 15).

9

When determining the jury instructions to be given on state claims, federal courts sitting in diversity ordinarily look to state law. *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000)(noting that Kentucky has adopted a "bare bones" approach to jury instructions). However, federal law applies when determining whether a jury instruction is prejudicial. *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799, 802 (6th Cir. 1984). The reviewing court must consider whether the given instructions, viewed as a whole, "adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Webster v. Edward D. Jones & Co., LP,* 197 F.3d 815, 820 (6th Cir. 1999). A district court's refusal to give a requested jury instruction is reversible error if: (1) the omitted instruction is a correct statement of law; (2) the instruction is not substantially covered by the other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case. *Id.*

Under Kentucky law, negligence per se is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Estate Mktg., Inc. V. Franz*, 885 S.W.2d 921, 926-27 (Ky. 1994). Stated another way, negligence per se allows a damaged party to "sue for a violation of the statutory standard of care if the statute in question provides no inclusive civil remedy and if the party is within the class of persons the statute is intended to protect." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008). "The 'general duty,' breach of which gives rise to liability, is the duty to exercise ordinary care, and properly drafted instructions utilize 'specific duties' as imposed by statutes only as amplification of the 'general duty,' and not as the source of such duty." *Wemyss v. Coleman*, 729 S.W.2d 174, 180 (Ky. 1987); *see also Henson v. Klein*, 319 S.W.3d 413, 421 (Ky. 2010). Accordingly, the appropriate way to advise the jury of

statutory duties is to "take judicial notice of the same and incorporate them in the instructions as 'specific duties' included within the 'general duty....to exercise ordinary care." *Id.*

When a person's ability to "conform with a specific duty is arguably affected by the presence of a sudden and unexpected peril, the jury is not adequately or fairly informed of what the substantive law requires unless the specific duty is qualified with a sudden emergency instruction." *Henson*, 319 S.W.3d at 421. Courts have held that swooping planes, falling boulders, icy patches and children standing in the middle of the road qualify as unexpected peril. *Regenstreif v. Phelps*, 142 S.W.3d 1, 5 (Ky. 2004). Instead of excusing fault, this instruction aims to "define[] the conduct to be expected of a prudent person in an emergency situation." *Id.* The appropriateness of this instruction "rests upon the theory that the affected party, [plaintiff or defendant,] was suddenly confronted with a choice between alternative courses of action." *Mason v. Keltner*, 854 S.W.2d 780, 783 (Ky. Ct. App. 1992).

It seems that Plaintiff is confused as to the nature of the negligence per se instruction. He argues that the Court failed to instruct on negligence per se because it did not adopt his proposed separate instruction. Under Kentucky law, the proper way to instruct on negligence per se is to incorporate the statutory standard into the broader duty of care instruction. Plaintiff's unfamiliarity with this rule puts him in a rather awkward position–he is inadvertently complaining about a decision that the Court made in his favor. The Court *did* instruct on negligence per se by stating that the general duty of care included a specific duty to keep the vehicle on the right hand side of the road.

As to Plaintiff's requested sudden emergency instruction, the Court chose to omit such an instruction because it would create even more confusion. In coming to this conclusion, the Court reasoned "If there was an emergency, the Court can't say which party caused it or brought it on, [and]...the testimony being so convergent, giving it for one side and not the other would even create more confusion." (Doc. # 253 at 31-32). The Court further noted that the given instructions were "a fair, correct statement of Kentucky law and do allow the parties to make all the same arguments that they would make, even in the absence of giving that sudden emergency instruction." (*Id.*). Even if the Court erred in omitting the sudden emergency instruction, Plaintiff has put forth no evidence to show that the alleged error was not harmless.

### III. Conclusion

In summary, this contested matter was submitted to the jury for its decision. The trial was fair, the jury has spoken, and its verdict is not one that could not reasonably have been reached. Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Plaintiff's Motion for Judgment as a Matter of Law (Doc. # 259) and Motion for New Trial (Doc. # 260) are hereby **DENIED**.

This 20th day of January, 2014.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\Covington\2011\11-386 MOO re Rule 50 and 59 Mtn.wpd